UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:05-CR-09 |
| | ) | |
| HUGH LAMB | ) | |

### **MEMORANDUM OPINION**

This defendant has appealed his conviction for violations of 36 C.F.R. § 261.12(d) and *Tenn. Code Ann.* § 70-4-302 by assimilation following a two day bench trial before the United States Magistrate Judge. On January 26, 2005 the United States Magistrate Judge issued a Memorandum of Decision finding both this defendant and his brother, Kenneth Lamb, who was charged with the same violations, guilty of the petty offenses with which they were charged. The defendant filed a timely notice of appeal and a transcript of the proceedings below.

The sole issue raised by the defendant is whether the evidence heard by the United States Magistrate Judge is sufficient to support his conviction. The scope of review is the same as that of a circuit court of appeals on an appeal from a district court judgment. *Fed. Crim. Pro.* 58(g)(2)(D). When assessing the sufficiency of the evidence to sustain a conviction on appeal, therefore, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In considering the evidence, this Court must allow the government the benefit of all reasonable inferences and refrain from independently judging the weight of the evidence. *United States v. Arnold*, 410 F. 3d 895, 899 (6th Cir. 2005). If the Magistrate Judge's factual findings are supported by sufficient evidence, the conviction must be affirmed. *United States v. Lofton*, 233 F. 3d 313, 317 (4th Cir. 2000). *See also United States v. Beddow*, 957 F. 2d 1330 (6th Cir. 1992).

In determining how much evidence is sufficient, the Sixth Circuit has noted that "more than a mere scintilla" is required, stating:

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

*United States v. Orrico*, 599 F. 2d 113, 117 (6th Cir. 1977).

In determining whether the circumstantial and/or direct evidence was sufficient to support this defendant's conviction, the Court must consider whether sufficient evidence was presented to prove the elements of each offense. 26 C.F.R. § 261.12(d) prohibits "blocking, restricting, or otherwise interfering with the use of

2

a road, trail, or gate." *Tenn. Code Ann.* § 70-4-302, the Hunter Protection Act, provides that a person commits a Class C misdemeanor who "interferes with the lawful taking of a wild animal by another with the intent to prevent the taking."

After careful review of the transcript of the proceedings before the United States Magistrate Judge, this Court, after considering the evidence in the light most favorable to the government, is of the opinion that the United States Magistrate Judge was presented with sufficient evidence from which he could convict this defendant on both charges.

Officers of the Tennessee Wildlife Resources Agency ("TWRA") testified that during the early bear hunting season both Hugh and Kenneth Lamb had been told not to block the Forest Service road with their vehicles. Following these verbal warnings, the TWRA officers, in conjunction with United States Forest Service ("USFS") officers, determined to conduct an undercover investigation on December 2, 2004, the first day of open season for bear hunting. At approximately 4:00 a.m. on December 2, 2004, Hugh Lamb called several TWRA and USFS officers to inform them that a gate leading into the Old Forge area of the Cherokee National Forest had been locked. This was the same area in which the brothers had earlier been warned about blocking the road.

3

The gate had not been locked by either the TWRA or the USFS, and Mr. Lamb indicated that he did not know who had locked the gate. Nevertheless, a TWRA officer had been in that area on the afternoon of December 1, 2004, and the gate was unlocked. There was further testimony that there were no other hunters in that area, other than the group hunting with the Lamb brothers. Further, while TWRA Officer Marvin Reeves gave Hugh Lamb permission to cut the lock on the gate, and was later provided a lock by Mr. Lamb which had been cut on both sides, two officers testified that it would be nearly impossible to cut a lock on a Forest Service gate, because a steel sleeve covered the lock area, making it difficult to even open a lock with a key.

When undercover officers arrived at the gate leading into the Old Forge area at approximately 7:00 a.m. on December 2, 2004, the gate was open, but the single track gravel road was blocked by vehicles two abreast. Officers testified that vehicles on the right hand side of the road were parked with their right tires on the shoulder of the road, considered to be legal parking by the USFS on a single lane gravel road, because such parking would permit another vehicle to pass to the left. Officer Gibbs of the TWRA, who was one of the undercover officers, testified that the first car parked to the left, which was blocking passage on this road, was titled to Hugh Lamb. The second vehicle behind it was titled to Kenneth Lamb. Notably, in his testimony on cross-examination, Kenneth Lamb conceded more than once that the

4

road was blocked at the time he was approached by the undercover officer. Further, while most of the vehicles were occupied, and there was testimony that the vehicles on the left were preparing to momentarily enter the Old Forge area to hunt, thereby opening up the road for passage, Hugh Lamb, to whom the first vehicle was titled, had already walked well into the Old Forge area prior to the undercover officers arriving. When one undercover officer, Special Agent Russ Arthur, arrived, disguised as a hunter, he approached the first vehicle which was blocking the road, and spoke to Kenneth Lamb. Kenneth Lamb was in radio contact with his brother Hugh, who was already in the Old Forge area tracking bear. Special Agent Arthur requested that Kenneth Lamb move some vehicles so that he could enter the area but Kenneth Lamb refused. Special Agent Arthur's recollection of his conversation with Kenneth Lamb is as follows:

> . . . look, he said right now Hugh don't want anybody up in there. He's already found some tracks, you know, he'll turn on them when he wants to. And you know, the best thing that you need to do is just go back there and get in your truck, and you know, and cool your heels or something to that effect. And would not allow me through.

Special Agent Arthur further testified that it was apparent to him that Kenneth Lamb was the leader of the group of hunters at the gate.[1]

---

[1] The evidence cited above by this Court is but a part of the evidence presented to the United States Magistrate Judge from which the factual conclusions in question could have been reasonably inferred.

5

All persons parked on the lefthand side of the road behind vehicles titled to Hugh and Kenneth Lamb on December 2, 2004, were also charged with violating 36 C.F.R. § 261.12(d) but were found not guilty by the Magistrate Judge. The defendant insists that the acquittal of the other defendants necessitates a finding that this defendant should not have been convicted of blocking, restricting or otherwise interfering with the use of a road, trail, or gate. However, the aforementioned evidence supports a reasonable inference that the other defendants were merely caught up in a barrier created by Hugh and Kenneth Lamb. The evidence and the inferences fairly and reasonably drawn therefrom certainly support a finding that the first two vehicles were owned by the Lambs, that the brothers were "in charge," of this hunting group and that they acted in concert in blocking the road. The fact that some co-defendants were acquitted is entirely irrelevant to the question before this Court. The government's case against each defendant must be examined independently and separately from the case against any other defendant. In fact, the Magistrate Judge was required to separately consider the evidence against each defendant and to enter a separate verdict as to each defendant.

It should be emphasized that it is not up to this Court to weigh the evidence and to determine in the first instance whether the evidence establishes the crime beyond a reasonable doubt, but merely whether there is sufficient evidence from which the Untied States Magistrate Judge could have concluded, beyond a reasonable

doubt, that the defendant was guilty. All that 36 C.F.R. § 261.12(d) requires is that the road or gate be blocked, restricted, or that there be other interference with the use of the road or gate. The regulation does not provide any exceptions for those simply waiting in the middle of the road for hunting time to begin nor does the statute provide any exceptions for brevity of time during which the road is blocked.

      Likewise, the circumstantial and direct evidence introduced before the Magistrate Judge provides more than sufficient evidence from which the United States Magistrate Judge could have reasonably concluded that the defendant violated the Tennessee Hunter Protection Act either by creating a situation, through locking the Old Forge gate, by which the defendants would practically insure themselves first entrance into the forest, or by Kenneth Lamb refusing the undercover officer entry into the Old Forge area to which Hugh Lamb apparently acquiesced through radio contact. The defendants argue that the government must prove that the person prohibited from entering the forest by the defendant actually had the intent to hunt. However, it is not the victim's *mens rea* upon which the statute relies, but the *mens rea* of the defendant, who must intend to interfere with the lawful taking of a wild animal with the intent to prevent the taking of the animal. Under the clear terms of the statute, it is enough that this defendant took actions which could reasonably be construed to interfere with any hunter following the same bear trails as the defendants

7

and thus potentially taking a bear which might have otherwise been taken by one of the defendant's hunting party.

For the foregoing reasons, it is the opinion of this Court that sufficient evidence exists to support the Judgment of the United States Magistrate Judge, and therefore, the Judgment against this defendant will be **AFFIRMED**.

ENTER:

                                                s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE

8

Case 2:05-cr-00009   Document 7-1   Filed 12/09/05   Page 8 of 8   PageID #: 8